**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **DARYL BULEY,** ) | |
| ) | |
| ) | |
| *Plaintiff,* ) | Civil Action No. 25-cv- |
| ) | |
| *)* | **Jury Trial Demanded** |
| v. ) | |
| ) | |
| **STEPHEN KOZLOSKI, JR**. in his official) | |
| and individual capacity, as Chief of Police   ) | |
| for the Town of Monson Police Department ) | |
| Munson, Massachusetts; **TOWN OF**          ) | |
| **MONSON,** Massachusetts, a municipal       ) | |
| corporation; **JOHN R. MORRELL**, in his   ) | |
| official and individual capacity, as Chair of  ) | |
| the Town of Monson Select Board; **PETER** ) | |
| **WARREN**, in his official and individual     ) | |
| capacity, as Vice-Chair of the Town of        ) | |
| Monson Select Board; **PATRICIA A.**         ) | |
| **ONEY**, in her official and individual         ) | |
| capacity, as a member of the Town of         ) | |
| Monson Select Board; and  **JOHN J.**        ) | |
| **MAZZA,** in his official and individual        ) | |
| capacity as statewide director of the         ) | |
| Massachusetts Executive Office of Public    ) | |
| Safety and Security, Municipal Police        ) | |
| Training Committee,                                ) | |
| Defendants.          ) | |
| _____) | |

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**
**(Violation of Fourteenth Amendment pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985(3))**

**INTRODUCTION**

This is an action brought by Plaintiff **DARYL BULEY**, for violation of his civil rights

pursuant to the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the

United States Constitution; for Retaliation pursuant to 42 U.S.C. §1983, and for conspiracy to

deprive the Plaintiff of his civil rights pursuant to 42 U.S.C. §1985(3), by the Defendants

**STEPHEN KOZLOSKI, JR**. in his official and individual capacity, as Chief of Police for the Town of Monson Police Department; the **TOWN OF MONSON,** Massachusetts; **JOHN R. MORRELL**, in his official and individual capacity, as Chair of the Town of Monson Select Board; **PETER WARREN**, in his official and individual capacity, as Vice-Chair of the Town of Monson Select Board; **PATRICIA A. ONEY**, in her official and individual capacity, as a member of the Town of Monson Select Board.

The action against **JOHN J. MAZZA,** in his official and individual capacity as statewide director of the Massachusetts Executive Office of Public Safety and Security, Municipal Police Training Committee, seeks declaratory and prospective injunctive relief resulting from his denial of necessary police officer training to the Plaintiff because of the Plaintiff's exercise of his constitutional rights under the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3) and 28 U.S.C. §2201.

2.      Venue is proper pursuant to 28 U.S.C. §1391, as the Defendants reside in the District of Massachusetts and because the activities complained of herein occurred in the District of Massachusetts.

3.      Plaintiff has performed all conditions precedent required for the filing of this action and exhausted his administrative remedies prior to initiating this action. Plaintiff received a Final Agency Decision dated February 20, 2025, denying his clams.

**PARTIES**

4.      Plaintiff Daryl Buley, is over the age of twenty-one years, a non-probationary twenty-four (24) year veteran police officer employed by the Town of Monson, Massachusetts Police Department with a property interest in his continued employment.

5.      Stephen Kozloski, Jr. in his official and individual capacity, is the Chief of Police for the Town of Monson Massachusetts Police Department, and a municipal policymaking official whose actions represent the official policy and practice of the Town of Monson, and an individual who oversees the day-to-day operations of the Town of Monson, Massachusetts Police Department.  At all times herein, Kozloski acted under color of state law.

6.      The Town of Monson, is a municipal corporation established by the laws of the Commonwealth of Massachusetts and as such operates under the color of state law.

7.      John R. Morrell, in his official and individual capacity, is Chair of the Town of Monson, Massachusetts Select Board, and a municipal policymaking official whose actions represent the official policy and practice of the Town of Monson, Massachusetts Police Department.  At all times herein, Morrell acted under color of state law.

8.      Peter Warren, in his official and individual capacity, is Vice-Chair of the Town of Monson, Massachusetts Select Board, and a municipal policymaking official whose actions represent the official policy and practice of the Town of Monson, Massachusetts Police Department.  At all times herein, Warren acted under color of state law.

9.      Patricia A. Oney, in her official and individual capacity, as a member of the Town of Monson Massachusetts Select Board, and a municipal policymaking official whose actions represent the official policy and practice of the Town of Monson, Massachusetts Police

Department.  At all times herein, Oney acted under color of state law.

10.     John J.  Mazza, in his official and individual capacity as the statewide director of the Massachusetts Executive Office of Public Safety and Security, Municipal Police Training Committee, (EOPSS/MPTC) is a policymaking official who oversees the day-to-day operations of the EOPSS/MPTC, whose actions represent the official policy and practice of the Commonwealth of Massachusetts EOPSS/MPTC, and who acts at all times under color of state law.

### FACTUAL ALLEGATIONS

11.     The Massachusetts Executive Office of Public Safety and Security, (EOPSS) is responsible for the policy development and budgetary oversight of its secretariat agencies, independent programs, and several boards which aid in crime prevention, homeland security preparedness, and ensuring the safety of residents and visitors in the Commonwealth.`

12.     The Municipal Police Training Committee (MPTC) is a subordinate organization within the EOPSS and is responsible for the development and delivery of training standards of municipal, MBTA, environmental, UMass, campus police officers, and deputy sheriffs performing police duties and functions.

13.     The Commonwealth of Massachusetts has an extensive system of police training that starts with the new recruit and continues through all the active years of veteran officers.

14.     The EOPSS/MPTC training system is comprised of the mandatory recruit officer course and mandatory annual in-service training.  Although not a training requirement, the MPTC also provides specialized training to police officers through various outside vendors.

15.     The specialized training courses offered by the EOPSS/MPTC are intended to

further the professional development and leadership of a police officer by improving a particular skill or in preparing them for a specific policing role.

16.    Specialized courses can be included in the in-service training program of individual officers by local police departments to meet the mandated 40-hour requirement, although they are more intensive than in-service courses. These training courses are also available through other organizations, which the EOPSS/ MPTC occasionally announces on their website.

17.    Specialized courses are evaluated for content and applicability and approved by the EOPSS/MPTC prior to being offered to police departments ands officers throughout the Commonwealth.

18.    On or about December 26, 2024, Defendant Mazza notified Defendant Kozloski by email that his department had been selected to attend the Active Attack Integrated Response (AAIR) class at the Palmer High School in Palmer, Massachusetts. **(Exh. A)**  While this training was not a *mandatory* requirement from the EOPSS/MPTC, Defendant Kozloski ordered the training as mandatory for the Monson Town Police Department.

19.    Attached with that email notification were instructions which specifically provided that the training would take place on January 25-26, 2025.  One-hundred percent attendance was required in addition to pre-registration and a pre-test by January 20, 2025.  *Id.*

20.    The announcement also provided additional instructions for attendees concerning meals, training clothing, eye and ear protection, firearms, and police department issued radios. *Id.*

21.    The announcement mandated that the attendee execute a ***release and waiver of***

*liability* required by Texas State University, the vendor hosting and providing the AAIR training

through the EOPSS/MPTC.  **(Exh. B)**

22.    The Waiver and Release of Liability included with the registration packet read:[1]

(a) **Release**

In consideration for facilitating my participation in ALERRT[2] training sessions during the dates shown below, *I release and agree not to sue the Releasees for any claims or causes of action that I may have*, whether or not caused by the negligence of the Releasees.  This release includes the time when I am participating in the training sessions, and when traveling to and from the training sessions.  This *release includes claims for property loss or damage, and for personal injuries to me, including death.*

*Id.* (emphasis added)

(b) **Risks**

To the best of my knowledge, I can participate in the training sessions.  I am aware of the risks and hazards connected with the sessions, and I elect to participate voluntarily and engage in these training sessions, knowing that they may be hazardous to me and my property.  *I voluntarily assume full responsibility for property loss or damage and for personal injury, including death, that I may sustain as a result of being engaged in these training sessions*, whether or not caused by the negligence or the releasees.

*Id.* (emphasis added)

(c) **Indemnity**

*I also agree to indemnify and hold harmless the Releasees from any loss, liability, damage or costs, including court costs and attorney's fees, that they may incur due to my participation in the training sessions, whether caused by the negligence of releasees or otherwise.  For example, I specifically agree to indemnify and hold harmless the Releasees from losses they may incur as a result of my injuring another person or damaging another persons property while participating in the training sessions.*

*Id.* (emphasis added)

---

[1]    *Numbered (a through e) not in the original but only to assist in answering the complaint.

[2]    Advanced Law Enforcement Rapid Response Training.

(d) **Intent**

*I intend that this Release and Indemnity Agreement bind not only me, but also the members of my family and my spouse (if any) if I am alive, and my heirs and personal representatives if I am not alive.  I intend this as a release, discharge and promise not to sue the Releasees.  I further agree that the Release and Indemnity Agreement should be construed in accordance with the laws of Texas.*

*Id.* (emphasis added)

(e) **Marketing**

*I hereby grant Advanced Law Enforcement Rapid Response Training and Texas State University the right to use my name, likeness, photograph and agency affiliation in future funding and marketing efforts* in support of ALERRT.  In return, ALERRT guarantees that my name, likeness, photograph or agency affiliation will not be used for profit or commercial enterprises.

*Id.* (emphasis added)

23.    On January 9, 2025, the Plaintiff reached out to Monson Police Department Training Coordinator Sergeant Dustin Hull expressing his concerns about the waiver and release of liability.  Plaintiff followed up that contact by providing Sergeant Hull with a screenshot of the waiver and release as it pertained to the "Intent" and "Marketing" provisions in the release and waiver.

24.    Plaintiff's initial concern revolved around the use of his name, date of birth and other identifying information which could be use by the vendor for marketing purposes in what he believed may have constituted an ethics violation under Commonwealth G.L. c.268A.  Later, Plaintiff  raised concerns about the "Intent" provision.

25.    Shortly thereafter, Sergeant Hull contacted Defendant Mazza to discuss the Plaintiff's concerns.

26.    Defendant Mazza reported back to Sergeant Hull and stated that a "review by

7

EEOPS and ALERRT both unequivocally stated that the release and waiver was *mandatory* and that there *would be no substitute*."

27.    Consequently, Defendant Mazza maintained that if the release and waiver was not signed, the Plaintiff would not be allowed to participate in the training.  This demand to sign the release and waiver and the denial of training in the absence of executing the release and waiver by Defendant Mazza represented the official policy and practice of the EOPSS/MPTC.

28.    On January 25, 2025, Plaintiff arrived at the training site to participate in the EOPSS/MPTC training.  However, the Plaintiff refused to execute the release and waiver.

29.    Sergeant Hull contacted Defendant Mazza about the Plaintiff's refusal to execute the release and waiver.  At that time also, Plaintiff spoke with Defendant Mazza concerning the release and waiver expressing his concerns about signing the release and waiver.  The Plaintiff further  informed Mazza that he was ready to participate in the training absent the execution of the release and waiver.

30.    Defendant Mazza advised the Plaintiff that the issue of the release and waiver was "non-negotiable," and that the waiver must be signed before Plaintiff would be allowed to participate in the training.  This demand by Defendant Mazza and his subsequent denial again represented the official policy and practice of the EOPSS/MPTC.

31.    Defendant Mazza also advised Sergeant Hull that EEOPS and ALERRT has a *"zero tolerance for non-compliance with the forms and waivers" and that the Plaintiff would not be allowed to participate in the training if he was unwilling to execute the release and waiver.* (emphasis added)  This declaration by Defendant Mazza again represented the official policy and practice of the EOPSS/MPTC.

32.    Sergeant Hull subsequently notified Defendant Kozloski who stated to the sergeant that "effective immediately" the Plaintiff was being placed on administrative leave. Once advised by Sergeant Hull of Defendant Kozloski's order, Plaintiff left the training site.

33.    On January 27, 2025, Defendant Kozloski emailed the Plaintiff concerning the Plaintiff's "failure to attend mandatory training on 01/25/2025." **(Exh. C)**

34.    In that notification, Defendant Kozloski charged the Plaintiff with the following administrative violations: (a) Neglect of Duty; (b) Fitness for Duty; (c) Incompetence; (d) Failure to Follow Orders; and (e) Insubordination.  Kozloski further informed the Plaintiff that these charges were also filed with the Massachusetts Peace Officers Standards and Training Commission (POST).  *Id.*

35.    On January 29, 2025, Defendant Kozloski sustained all of the administrative charges against the Plaintiff thereafter suspending him for two (2) days and transferring the Plaintiff to the midnight to eight (12-8) tour of duty shift until such time as he could complete the mandatory training.  Such attendance would require that the Plaintiff execute the release and waiver he previously objected to.  The sustaining of these administrative charges resulting from the Plaintiff's refusal to execute the release and waiver represented the official policy and practice of the Town of Monson and its police department.  **(Exh. D)**

36.    Defendant Kozloski then imposed additional sanctions on the Plaintiff because of his refusal to execute the release and waiver.  In this regard, Plaintiff was restricted in overtime activity and outside overtime details.

37.    Additional sanctions imposed by the official policy and practice of Defendant Kozloski, included limitations on working overtime on any other police shift other than the

midnight to eight (12-8) tour of duty.

38.    On February 3, 2025, in response to the administrative sanctions imposed by the official policy and practice of Defendant Kozloski, the International Brotherhood of Police Officers Local 423, the Plaintiff's collective bargaining representative, filed a contractual grievance under the Town of Monson and Local 423's collective bargaining agreement challenging the sanctions imposed.

39.    In the same vein, on February 7, 2025, IBPO 423 counsel wrote Defendants Kozloski and Mazza concerning the mandatory requirement that the Plaintiff execute the release and waiver of liability concerning the active-shooter training.  (**Exh. E**)

40.    In those letters, counsel wrote:

The waiver from this vendor along with the Department's and Mr. Mazza's demand that Officer Buley execute the waiver violates his rights under the 14th Amendment to the U.S. Constitution as it denies him his constitutionally protected right of access to the Courts.  Moreover, the waiver violates the Commonwealth's ethics code under G.L. c.268A, §§ 17, 19, 20, and 23.  *Id.*

41.    In the same letter counsel opined:

As applied to Officer Buley, this release is blatantly illegal. The Department's use of its coercive authority as an employer to compel, order, direct, demand or threaten Officer Buley with disciplinary action resulting from his failure to execute this blatantly illegal waiver, is unlawful.  Similarly, any adverse action EOPSS' takes against Officer Buley as a result of his refusal to execute the waiver would similarly be illegal and subject it to a challenge in federal court.

In brief, neither the Department nor the Commonwealth can lawfully order an employee to waive their right to access to the courts or require a police officer to release or discharge a vendor such as ALERRT from liability arising out of the vendor's negligence in causing the injury or death to an officer participant.  The very demand by the vendor, the Department and the Commonwealth is coercive and is not a voluntary waiver.

If the Department and the Commonwealth refuse to allow Officer Buley to participate in the ALERRT training without executing the waiver or take adverse action against the

officer because of his lawful refusal to execute the waiver, this office will proceed into federal court and will seek appropriate relief against the Department and the Commonwealth resulting from the lawful exercise of his rights under Federal Constitution and the Commonwealth's law.

In addition to seeking injunctive relief and damages for the infringement of Officer Buley's rights, I will seek attorney's fees and costs pursuant to 42 U.S.C. §1988.

*Id.*

42.    On February 19, 2025, a meeting was held with Defendants Kozloski, Morell, Warren and Oney at the Town of Monson.  During that meeting, a lengthy discussion concerning the alleged illegality of the release and waiver occurred along with a challenge to the sanctions imposed upon the Plaintiff resulting from the exercise of his constitutionally protected right to due process, equal protection and the resultant retaliation imposed because of the Plaintiff's exercise of those rights.

43.    On February 20, 2025, Defendants Morrell, Warren and Oney denied the administrative grievance sustaining the adverse administrative action taken against the Plaintiff and rejecting the claimed illegality of the release and waiver.  **(Exh. F)**

44.    On February 26, 2025, counsel wrote MPTC General Counsel James O'Brien in a further attempt to resolve the dispute.  **(Exh. G)**  No resolution was reached over the mandatory release and waiver.

## COUNT I
### Action Pursuant to 42 U.S.C §1983
### Viol. of Due Process and Equal Protection
### under the 14th Amendment of the U.S. Constitution

*Buley v. Kozloski, Town of Monson, Morrell, Warren and Oney*

45.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 44

11

as though fully set forth herein.

46.      This is an action to vindicate Plaintiff's constitutional rights of access to the courts and equal protection of the law under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983.

47.      The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution guarantees an individual of access to the courts to seek redress of a claim for an injury and/or death under both substantive and procedural due process guarantees.

48.      The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution also guarantees an individual access to the courts to seek redress for an injury and/or death caused by a culpable individual.

49.      Denying access to the courts by the Defendants' adoption and implementation of its official policy and practice as set forth herein constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment, which guarantees that no state shall deny any person within its jurisdiction the equal protection of the laws.

50.      Thus individuals, such as the Plaintiff, are entitled to a fair and impartial legal process, and that barriers denying access to the courts based on arbitrary distinctions are unconstitutional.

51.      Access to the courts is a fundamental aspect of due process and equal protection, as it provides individuals with a means to seek redress for grievances and enforcement of their rights.

52.      The Town of Munson is a municipality created under the laws of the Commonwealth of Massachusetts and as such operates under color of state law.

53.     Defendants Kozloski, Morrell, Warren and Oney are policymaking officials for the Town of Monson.  All four Defendants, as alleged herein, acted under color of state law.

54.     In the same vein, Defendants Kozloski, Morrell, Warren and Oney are policymaking officials for the Town of Monson Police Department, a subordinate entity of the Town of Monson.

55.     The Town of Monson, through its Police Department, adopted and maintains an official policy of denying access to the courts in addition to further authorizing discipline for police officers as it pertains to training offered by the EOPSS/MPTC or outside vendors when the police officer refuses to execute a release and waiver of liability which denies access to the courts.

56.     Specifically, Defendants Kozloski, Morrell, Warren and Oney, on behalf of the Town of Monson and its municipal police department, are the policymaking officials who adopted, and maintained the unconstitutional official policy of the Town of Monson denying the Plaintiff access to the courts and equal protection of the law, in violation of those protections guaranteed under the Fourteenth Amendment to the U.S. Constitution.

57.     Pursuant to the unconstitutional policy adopted and maintained by Defendants Kozloski, Morrell, Warren and Oney, when the Plaintiff refused to execute a release and waiver of liability for injury or death caused by an outside training vendor,  Defendants Kozloski, Morrell, Warren and Oney, initiated and adjudicated an adverse disciplinary action against the Plaintiff for that refusal to release and waive liability.

58.     In the same vein, under the official policy adopted and maintained by Defendants Kozloski, Morrell, Warren and Oney, not only was the Plaintiff required to waive liability for

himself, but the Plaintiff was mandated to waive liability and access to the courts for his estate resulting from injury or death caused by the vendor. *See* **Exh B** *supra*.

59.    The release and waiver further mandated that the Plaintiff indemnify and hold harmless the Releasees (vendor) from any loss, liability, damage or costs, including court costs and attorney's fees, that they may incur due to the employee's participation in the training sessions, whether caused by the negligence of releasees or otherwise.

60.    Additionally, the release and waiver required that the Plaintiff agree to indemnify and hold harmless the Releasees (vendor) from losses they may incur as a result of the Plaintiff injuring another person or damaging another person's property while participating in the training sessions.

61.    The Release and waiver agreement bound not only the Plaintiff to its terms and conditions but also members of the Plaintiff's family, his spouse, his heirs and personal representatives if the Plaintiff was deceased.

62.    On January 25, 2025, Defendant Kozloski ordered the Plaintiff to execute the release and waiver as described herein or face administrative disciplinary action.

63.    On January 25, 2025,  Plaintiff refused to execute the release and waiver and refused to waive his rights to access to the Courts for injury or death resulting from the vendor training he was scheduled to attend.

64.    On January 25, 2025, Defendant suspended the Plaintiff over his refusal to waive his rights of access to the courts.  This suspension resulted in a loss of pay and a disciplinary sanction on the Plaintiff's employment record.

65.    On January 29, 2025, Defendant Kozloski upheld that suspension and disciplinary

charges in furtherance of the unconstitutional policy adopted by the Defendants.

66.    Defendants were placed on notice of the constitutional infirmity of their actions as it pertained to their demand that the Plaintiff execute the challenged release and waiver denying access to the courts.

67.    Defendants knew or should have known that the policy adopted and maintained by them was inadequate but nonetheless Defendants exhibited deliberate indifference to the unconstitutional effects of that inadequacy.

68.    On February 20, 2025, Defendants Morrell, Warren, and Oney, approved and upheld the disciplinary suspension and also formally adopted the Defendants' policy of approving disciplinary actions when and employee refuses to execute a release and waiver which denied the employee access to the courts. **(Exh. F)**

**WHEREFORE,** Plaintiff demands judgment against the Defendants, declaratory and injunctive relief, damages to be determined at trial and attorney fees and costs pursuant to 42 U.S.C. §1988 and such further relief as the Court deems necessary, appropriate and just.

## COUNT II

### Action Pursuant to 42 U.S.C §1983
### Retaliation for the Exercise of a Protected Constitutional Right

### *Buley v. Kozloski, Town of Monson, Morrell, Warren and Oney*

69.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 68, as though fully set forth herein.

70.    This is an action for retaliation against the Defendants resulting from the exercise of protected constitutional rights by the Plaintiff.

15

71. Due Process of Law is a fundamental right secured under the Fourteenth Amendment to the U.S. Constitution.

72. Similarly, Equal Protection of the Law is a fundamental right secured under the Fourteenth Amendment to the U.S. Constitution.

73. At all times material herein, Defendants Kozloski, Morrell, Warren and Oney acted under color of state law and were official policymakers for Defendant Town of Monson.

74. On February 20, 2025, the Defendants retaliated and formally adjudicated and approved discipline against the Plaintiff resulting from the Plaintiff's exercise of his protected rights to due process and equal protection of the law. **(Exh. F**, *supra***)**

75. In this regard, Defendants suspended the Plaintiff from employment resulting in a loss of pay and an adverse mark on his personnel record.

76. In addition, the Defendants further retaliated against the Plaintiff, a 24-year police veteran, by transferring him from a day shift to a midnight shift resulting in loss of overtime opportunities adversely affecting his ability to earn compensation.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, declaratory and injunctive relief, damages to be determined at trial and attorney fees and costs pursuant to 42 U.S.C. §1988 and such further relief as the Court deems necessary, appropriate and just.

## COUNT III

**Action Pursuant to 42 U.S.C. §1985(3)**
**Conspiracy to Deprive/Interfere with Plaintiff's Civil Rights**

*Buley v. Kozloski, Town of Monson, Morrell, Warren and Oney*

77. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 76,

as though fully set forth herein.

78. This is an action for Conspiracy to Deprive and/or Interfere with Plaintiff's civil rights pursuant to 42 U.S.C. §1985(3)

79. Between January 25, 2025, and February 20, 2025, the Defendants acting under color of state law, and in concert with each other, conspired and agreed to deprive and interfere with the Plaintiff's constitutionally protected rights of Due Process of Law and Equal Protection of the Law under the Fourteenth Amendment to the U.S. Constitution.

80. In this regard, the Defendants approved and adjudicated a disciplinary suspension, loss of pay, denial of overtime opportunities, and reassignment to the midnight shift as a result of the Plaintiff refusal to waive his access to the courts pursuant to the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, declaratory and injunctive relief, damages to be determined at trial and attorney fees and costs pursuant to 42 U.S.C. §1988 and such further relief as the Court deems necessary, appropriate and just.

**COUNT IV**

**Action Pursuant to 42 U.S.C §1983**
**Viol. of Due Process and Equal Protection**
**under the 14th Amendment of the U.S. Constitution**
***Buley v. Mazza***

81. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 80, as though fully set forth herein.

82. This is an action to vindicate Plaintiff's constitutional rights of access to the courts and equal protection of the law under the Fourteenth Amendment to the United States

Constitution pursuant to 42 U.S.C. §1983.

83.    At all times material herein, Defendant Mazza acted under color of state law and was an official policymaker for Defendant Massachusetts Executive Office of Public Safety and Security, Municipal Police Training Committee (EOPSS).

84.    The Massachusetts Executive Office of Public Safety and Security, Municipal Police Training Committee( EOPSS) was created under the laws of the Commonwealth of Massachusetts and as such operates under color of state law.

85.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution guarantees an individual of access to the courts to seek redress a claim for an injury and/or death under both substantive and procedural due process guarantees.

86.    Due Process of Law is a fundamental right secured under the Fourteenth Amendment to the U.S. Constitution.

87.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution also guarantees an individual access to the courts to seek redress for an injury and/or death caused by a culpable individual.

88.    The Equal Protection of the Law is a fundamental right secured under the Fourteenth Amendment to the U.S. Constitution.

89.    Access to the courts is a fundamental aspect of due process and equal protection, as it provides individuals with a means to seek redress for grievances and enforcement of their rights.

90.    The Plaintiff, is entitled to a fair and impartial legal process,  Barriers, such as the mandatory release and waiver requirement challenged herein, denies access to the courts and is

based on unconstitutional arbitrary distinctions.

91.     The EOPSS/MPTC, through Mazza, adopted and maintains an official policy of denying law enforcement training offered by the EOPSS/MPTC or outside vendors approved by the EOPSS/MPTC, when the police officer refuses to execute a release and waiver of liability which denies access to the courts.

92.     Denying access to the courts by the Defendant Mazza's adoption and implementation of the EOPSS/MPTC official policy and practice constitutes a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, which guarantees that no state shall deny any person within its jurisdiction due process and equal protection of the laws.

93.     Specifically, on January 25, 2025, Defendant Mazza implemented the EOPSS/MPTC policy and refused to allow the Plaintiff to participate in ALERRT training because the Plaintiff refused to execute a release and waiver of liability denying him access to the courts.  This refusal violated Plaintiff's rights protected under the Fourteenth Amendment to the U.S. Constitution.

94.     Defendant Mazza further advised the Plaintiff that the issue of the release and waiver was "non-negotiable," and that the waiver must be signed before Plaintiff would be allowed to participate in the training.  This demand and denial by Defendant Mazza again represented the official policy of the EOPSS/MPTC.

95.     Defendant Mazza then advised Sergeant Hull that EEOPS and ALERRT has a *"zero tolerance for non-compliance with the forms and waivers and that the Plaintiff would not be allowed to participate in the training if he was unwilling to execute the release and waiver.* (emphasis added).  Defendant Mazza's declaration represents the official policy and practice of

19

the EOPSS/MPTC.

96.    As a result, Plaintiff was denied the opportunity to participate in the law enforcement training by Defendant Mazza because of Plaintiff's refusal to execute the release and waiver and Plaintiff's refusal to waive his rights to access to the Courts for injury or death resulting from the vendor training he was scheduled to attend.

97.    Defendant Mazza was placed on notice of the constitutional infirmity of his actions as it pertained to his demand that the Plaintiff execute the challenged release and waiver denying access to the courts.

98.    Defendant Mazza knew or should have known that the policy adopted and maintained by him as a policymaking official of EOPSS/MPTC was inadequate.  However, Mazza nonetheless exhibited deliberate indifference to the unconstitutional effects of that inadequacy.

**WHEREFORE,** Plaintiff demands judgment against the Defendant Mazza, declaratory and injunctive relief and attorney fees and costs pursuant to 42 U.S.C. §1988 and such further relief as the Court deems necessary, appropriate and just.

Dated: June 12, 2025
Albany, NY

Respectfully submitted,
***/s/ Stephen G. DeNigris, Esq.***
Stephen G. DeNigris, Esq.
Attorney for the Plaintiff & Assistant
General Counsel NAGE/IBPO
BBO No. 678332
The DeNigris Law Firm PLLC
P.O. Box 14643
Albany, NY  12212-4643
Office:            (518)355-1482
Office Fax:      (518)355-1562
E-Mail:          sgd853@aol.com